The appellate court of Illinois is briefing me. Thank you. Good afternoon. Please be seated. First case this afternoon is Hollenbeck v. City of Tuscola. That's case number 4160266 for the appellant Jeffrey... Help me. Okay. Okay. Okay. Thank you. And for the appellee, we have Michael Walsh, Leon Kinney, and Jennifer Turiello, who... Well, both of you will be arguing, and you've split your time up, correct? Very well. You may proceed. Please, as the court... Counselors, my name is Attorney Jeffrey Cocaine. I'm here on behalf of the plaintiff in this matter, Laurie Ann Hollenbeck. We have a case for two defendants, namely Leon Kinney and the City of Tuscola. I know that you've all read the brief, so I won't spend a lot of time on the facts unless you have any specific questions regarding the facts that I can clarify. Obviously, in a negligence claim, the duty is on the plaintiff to prove the elements of negligence, and the main issues here are duties on behalf of both defendants. Of course, the question of whether a duty was owed to my client by the respective defendants is one of law, which brings me to my first point, which I'll only discuss briefly, but I believe the trial court erred in determining whether the defendants owed my client duties. I have nothing but respect for the trial court and judge courts themselves, but I do feel that some mistakes were made at the trial court level, hence the reason I'm before you today. Of course, I understand the standard of review here is de novo, and as such, the trial court decision should have no bearing on your decision. However, I feel I'd be remiss if I did not briefly mention that the trial court made improper credibility determinations and improperly weighed evidence, and but for these errors, I believe that the trial court would have found that there was duties on the part of Leon Kinney and the City of Tuscola. I would first argue that Leon Kinney owed a duty to the plaintiff, although I don't need to remind your honors, obviously, that the standard here is that the evidence has to be viewed in the light most favorable to the non-moving party. Here, that would be the plaintiff and myself. Here's our assertation that the defendant, Kinney, had a duty to exercise ordinary care when he undertook mowing and yard maintenance of his property and of the city-owned parkway, and I would specifically argue that he had a duty when mowing not to allow grass clippings to cover deep and dangerous depression in the parkway. There are facts and evidence that defendant Kinney mowed his grass only a few times a year, and that the last time he mowed it was because he'd been cited for a city ordinance violation, and I believe the ordinance violation was eight inches or more. So this wasn't simply a case where he was mowing his yard to keep up with the Joneses or to put a checkerboard pattern. Well, in order for him to have a duty, wouldn't you have to show that he's assumed control of the public roadway for his own purposes? Well, I believe that's one of the ways that you can show a duty judgment. I'll get to that in a second if you don't mind, unless you'd rather me address that now. No, go ahead. Stay in rhythm. Thank you. Thank you. But I do believe that he just has a general duty. I believe that when he cut the – there's testimony that when he cut the grass, obviously it's going to be in large clumps because it was over eight inches, and it's going to – he didn't have a bagger, he didn't have a mulcher or anything like that. What do you mean by a general duty? Well, just a duty to maintain – It's not his property, correct? That's correct. That's correct. But I think if there was no duty whatsoever, Judge, what you'd be arguing is that anyone mowing their own property would owe no duty whatsoever to people on adjacent properties. But he wasn't mowing his own property. But he was mowing his property and the city parkway as well. But where this occurred, this was not his property, correct? Well, that's correct, Judge. But it is – there's a very – it's not a very large property, so there could have been – while he was actually – it could have been either way. It could have been while he was mowing his own property or the city property where any type of lawn debris could have covered the catchment. So you're talking about the fact that possibly from mowing his own property, something got on the other property? Yes, I think that both would be possibilities. Okay. There's no actual – in this case, usually in most cases where there's a parkway, there's a sidewalk that separates the private property versus the public property. In this case, there was no sidewalk or no – I understand that from the briefs. Okay. All right. I still feel that there is evidence that Kenny did act with negligence when he violated that duty. And I would think – I would also – and to your question, Judge, on appropriation, I would argue that there was appropriation which would create a duty for Mr. King. I would argue that there's clear and binding case law in Smith v. Rangel, which, as you know, is a decision from this court, the Fourth District Appellate Court. And I would, of course, concede that there are some issues that are not exactly the same. For example, in Smith there was a previous landlord-tenant relationship, which is absent here. However, I do think there are enough facts here to show that they're similar. In Smith, the defendant – to show appropriation, the defendants had cut the grass on the parkway as well and had also shoveled snow and things like that off of it. Here it's similar in that he did – he not only cut the grass on the city's property, he also picked up trash off the city's property. Admittedly, he did not shovel the city's property in the case of Barr, but that would have been impossible since there was no sidewalk. Was there any evidence he tried to preclude others from using? No, there was not. Well, I suppose other than the fact that he let the grass get over 8 inches in height. His grass or the property? Both, both. When he mowed, he would mow the parkway as well and mow the grass. Right, I understand that, but I guess I'm having a problem with – it seems like you're attributing responsibilities to him regarding the city-owned property. Well, what I'm saying is when he did, through action such as mowing the grass, then he does have appropriation. He does have responsibilities for that property as well, for the standard in Smith. And I know that a defendant pointed out some – a defendant for Mr. Kenny pointed out some cases, namely Gilmore v. Powers and Burke v. Grillo. Those are first and second district cases respectively, and I do understand that they held the decision in Smith in an unfavorable light. However, I think that that's a good point, considering that Smith is binding here and not persuasive. I would make the same argument that the city of Tuscola owed a duty of care, of ordinary care to keep its property in a reasonably safe condition and a duty to maintain its property against unreasonably dangerous conditions, such as the subject condition. I would first assert that the Tort Immunity Act was further defined by the Supreme Court of Illinois by its holding in Marshall v. City of Centralia. In Marshall, the Supreme Court found that the municipality, in that case the city of Centralia, did have a duty to protect pedestrians from unreasonably dangerous conditions on a parkway, and there was a similar duty here. To be certain, the plaintiff does not argue that customary catch basins are unreasonably dangerous conditions, but that this particular catch basin, which the evidence shows sat 10.56 inches below the grass level, was an unreasonably dangerous condition. Plaintiff against sites Marshall, which stated that municipalities have duties to not maintain unreasonably dangerous conditions in the nature of a pitfall, snare, or trap. What are you saying this was? I'm saying it was a pitfall, Judge. There's not case law which would specifically define that. However, what I could find was in the Oxford and Merriam-Webster, I used those definitions. The Oxford definition is hidden or unsuspected danger or difficulty. The Merriam-Webster definition would be a danger or a problem that is hidden or not obvious at first. Here I would say the depression was hidden, it was an unsuspected danger, and that it was not obvious until the plaintiff stepped into the depression and fractured her ankle. Thus, I would say the definition of a pitfall would be met, and the city had a duty to not allow such a pitfall or unreasonably safe condition on their property. Defendant city also argues that it is immune per the Tort Immunity Act for several reasons, one being that there's no actual or constructive notice. First, I would remind your honors that the issue of whether tort immunity applies is determined on a case-by-case basis. I would also remind you that the immunities are construed strictly against government defendants asserting them. I would argue that the city is not immune from liability from Section 3-102 of the Tort Immunity Act as it did have constructive notice. I want to back up just a little bit in saying that it represented a pitfall. Yes, ma'am. What was the evidence regarding the condition of this catch basin, whatever it's called? Was it in the condition that is customary? I mean, was there something uniquely problematic about this one? There wasn't necessarily anything broken or anything like that, but my argument would be when it sits 10.56 inches below the grass level, that would be unusual. What's true? Well, I think that the evidence stands for itself. And if your question is why did we not have an expert to testify on that? That's where I was going with you. Sure, sure. I would think that this is not something akin to the jury that they wouldn't be able to understand. I think the evidence is what it is, and they can look at pictures and make credibility determinations from testimony to decide whether it was or was not an unreasonable use. Well, you know, it's meant to sit down in the ground, right? It is. It is. And I'm not asserting that it shouldn't at all, but I think that 10.56 inches would come to the level of unreasonably dangerous. Even if all the other ones were also 10.5 inches? Well, there's no testimony that the other ones were 10.56 inches. I mean, if that were the case, then I wouldn't be making that argument. Well, we don't know if that's the case, do we? Isn't that? Well, I believe that there is. Go ahead. To be honest, I don't believe that there's testimony specific as to what each single one was, but there have never been any other complaints of any of these, so that would be just my assumption that the other ones were not as deep as this particular one. I would also cite the Tort Immunity Act 110-3-102B and 1, that state a public entity does not have constructive notice of a condition of its property that is not reasonably safe within the meaning of Section 3-102A if it establishes the existence of the condition and its character of not being reasonably safe would not have been discovered by an inspection system that was reasonably adequate considering the practicality and cost of inspection. The defendant's city of Tuscola has failed to establish that. Per the testimony of Dennis Cruzan, the defendant's city knew of the need for an inspection system of its catch bases. The defendant's city of Tuscola had constructive notice that its catch bases, by their nature, could become dangerous, and I think that it's logical to think that after 42 years, a catch basin or, frankly, any other city implement, for that matter, would not need inspection. I would also cite Pinto v. Munich, which I cited in the brief, which further defines the Act and states that notice of facts which would put a reasonably prudent person on inquiry rendered the authorities chargeable with knowledge of any fact that might be discovered by a reasonable investigation. I think that, per the standard in Pinto, the defendant's city of Tuscola had notice that the catch basin was 42 years old, which would put a reasonably prudent person on inquiry. I also cite Zemir v. City of Chicago, where constructive notice is established where a condition has existed for such a length of time that authorities exercising reasonable care and diligence might have known of it. Moreover, where no genuine issue of material fact regarding notice exists, summary judgment is warranted. And here I do think there are genuine issues of material fact, thus summary judgment is not appropriate. Furthermore, I would, or excuse me, the city contends that immunity is appropriate here as the decision not to implement an inspection system of the oil and ship catch basins was discretionary. Plaintiff cites a Supreme Court decision in Snyder v. Curran Township, which quoted Prosser stating that it would be difficult to conceive of any official act that did not admit of some discretion in the manner of its performance, even if it involved only driving of a nail. My point here just being clearly that not every decision by a city employee would be a discretionary decision. Not every, but how about this one? Well, I would argue that this is not discretionary also, Judge, and I'm getting to that right now actually. I think it's appropriate to point out some of the facts in the case to point that out. There's testimony by both Dennis Kruzan and the city administrator, Drew Hull, stating their decision to not implement an inspection system. I'm sorry, the city is saying that their testimony points that this was not a discretionary decision. However, Dennis Kruzan expressly testified that such a decision regarding city policy would be made by someone higher than him. Specifically, he testified that such a decision would be made by city administrator Hull. Thus, it was not discretionary or unique to him, and any type of decision of that would not be covered by the Tort Immunity Act. Now, on to the city administrator, Drew Hull, would be the one that would make that discretionary decision. He testified that there had been no discussion of whether such an inspection process would be put into effect. Thus, it's our argument that since there was no discretionary decision made to not implement an inspection system, the immunity would not apply. Unless your honors have any other specific questions, I'd like to save my time for rebuttal. I see none. You will have rebuttal. Counsel for the Appelese, please. May it please the court, counsel. Again, my name is Jennifer Turriello, and I'm here today representing the defendant Appelese, city of Tuscola. The thrust of plaintiff's argument on appeal is that the trial court improperly weighed evidence and assessed the credibility of witnesses in awarding summary judgment to the city. The overarching theme in the briefs that were submitted was that because of the trial court's purported errors in that regard, you must reverse, and we heard a little bit of that today as well at the beginning of counsel's argument. But the alleged improper weighing of evidence and assessing credibility of witnesses is not the crux of the appeal. Counsel has acknowledged we're here on de novo review, and as such, it's the end result that's being scrutinized, not the trial court-specific analysis. I do want to point out the trial court denied having weighed the testimony, weighed the evidence, or making credibility determinations among witnesses. I would submit to the court that the trial court actually granted summary judgment to the city based on the lack of competing, conflicting evidence. Now, plaintiff lacks key evidence on several points in this case, and some of your questions touched upon this, that she needs to pin a duty of care on the city with respect to this particular catch-basin lid. The chief among those evidentiary voids are there's no evidence, absolutely zero, to support plaintiff's theory that this catch-basin lid was sinking in the ground over time. No evidence at all. No evidence to support that the condition of the catch-basin at the time of her accident was different from when it was originally installed. There's no evidence to combat Dennis Cruzon, who's the foreman of the street department for the city, his testimony that catch-basin lids sit significantly below ground and some sit as much as six to eight inches below ground. We also have no evidence that combats the city administrator's testimony that this particular catch-basin resembled, it was unremarkable, it resembled all the other oil and ship catch-basins in town that are adjacent to oil and ship roads. And as has been alluded to, there's no expert testimony, no testimony from any other witnesses as to industry standards, what is a permissible catch-basin lid depth, if you will. There's nothing of the sort here in this record. So given that, there's no place for reasonable divergent inferences with respect to whether or not this storm sewer catch-basin lid constituted a customary parkway condition for which the city would not owe a duty of care. That's, among other reasons, why a plaintiff's case can't go to a jury. You know, we recognize in our briefs that a municipality has a duty to maintain its property in a reasonably safe condition. The genesis of that duty is common law, as we know, and that principle is codified in Section 3102 of the Tort Immunity Act. But courts interpreting that particular provision have stated that a municipality's duty is limited to not maintaining, with respect to parkway conditions, not maintaining anything in the nature of a trap, snare, or a pitfall. But a municipality is not liable for customary parkway conditions, even though they can be characterized as slightly dangerous. Well, this is almost a foot deep. How deep does it have to be to be a pitfall? I would submit, Your Honor, there's no evidence in this record that says that, one way or another. That says what? That says, that defines how deep. There's no testimony saying this is excessively deep. And I'm not an expert in that regard, but we're missing that here. That's one of the evidentiary voids. What I do want to say, because we've heard a lot about 10.56 inches. We keep hearing that. Okay, that measurement comes from plaintiffs. She had two affidavits in response to our summary judgment motion. But the measurement was from the lid to the top of the grass. And the trial court here very intelligently recognized that if that's the measurement we're talking about, it's the wrong measurement, because we don't walk on the top of the grass. What I want to know is, what's the measurement from the lid to soil level, not the top of the grass? When we have Mr. Kinney, who's testified that he lets his grass grow four to five inches before he cuts it, the trial court astutely recognized, hey, we might be adding several inches here to the relevant measurement. So I would submit to the court that based on what's in the record, we have plaintiff's lawyer who questioned several witnesses, Denny Cruzon being the premier one. If you look at the questioning, plaintiff's lawyer adopted a six to eight inch measurement in questioning witnesses. She dropped six to eight inches. My client dropped six to eight inches.  We have two other witnesses who testified to their estimations of the depth between the lid and soil level. Mr. Kinney says it's five to six inches at most, and plaintiff's husband says it's eight to nine inches at most. So at the end of the day, what we have here is six to eight inches at the end of the day, because the trial court recognized what plaintiff's giving us is not the relevant measurement. That's from the lid to the top of the grass. And I would submit to your honors that, you know, in other cases, height differentials of this, of six to seven inches, between portions of a parkway or a parkway and an abutting sidewalk, have been found insufficient to trigger liability for a municipality. I'm referring specifically to the Mazen v. Chicago White Sox case. In contrast, the existence of an open grate, an uncovered manhole. That's a pitfall. That's a trap. That's a snap. We don't have anything of the sort here. Counsel was asked about were there any, was there any testimony about there being any kind, anything wrong with this catch basin structurally, the lid. Nothing chipped, nothing missing, nothing broken, nothing loose. That's plaintiff's testimony. Her husband echoed all that. We do not have a trap, a snare, or a pitfall here. And if the standard is it's hidden, wow, we've just transformed what's supposed to be a limited duty. We've expanded it. We're perverting the holding of Marshall to hold that, to impose a duty of care under these circumstances. Not to mention, as has also been brought up this afternoon, a catch basin by its function. This particular catch basin, it has to be depressed in ground to drain water. It has to be. So there are allegations in this complaint that we had a duty to grade the area, to make it level. Well, if we do that, the catch basin is absolutely useless. Rather than constituting an unreasonably dangerous condition, that differential between the soil and the lid is something that prevents an unreasonably dangerous condition from occurring. Residential flooding, roadway flooding. So with respect to duty, the customary conditions cannot serve as the predicate for municipal liability and negligence. And that is exactly what we have here. And to impose a duty of care under these circumstances and on this record would pervert Marshall's holding. I quickly want to move to constructive notice because I think that's an equally valid point on which this particular summary judgment ruling can be affirmed. There is absolutely no evidence that there was ever a complaint or a service call or service request to come out city and do something about this catch basin. We have to also be, there are no known claims of anyone stepping into this catch basin and injuring themselves in 40 some odd years that this existed out there. So, you know, I have to ask, we have to focus on the particular defect that's being alleged. And that's this notion of, even though there's no evidence to support it, gradual subsidence. How is that something that's conspicuous? How is that something we're going to be able to see? And there's no evidence from anyone, no testimony about how long that phenomenon was occurring, when it started, when it stopped. How long has this condition been out there on the Parkway? Zero evidence. None. So based upon that, you know, even if you were to find there's a duty running from the city to the plaintiff, which I submit you shouldn't, but if you were, I believe that 3102 immunity would come into play here on this record and this evidence. I similarly believe with respect to plaintiff's allegations about the inspection system. I want to make clear, it's not that we don't have an inspection system. It's that for this particular kind of catch basin, we rely on a citizen complaint to prompt us to go out and do something, make a repair if necessary. And the reason for that is the configuration of this kind of catch basin versus your curb and gutter catch basins, which are more modern design, newer streets, and the testimony of record is that those catch basins clog more easily. So the decision gets made, hey, if we've got to clean these off, we're going to go for those because they clog, whereas the grass surrounding the others keeps them free of debris. And that is a discretionary policy determination that I would submit qualifies for immunity. Okay. Thank you. Thank you, Your Honors. Mr. Walsh. May it please the Court. Counsel. I'm Michael Walsh. I'm here on behalf of Leon Kinney. And I'm asking this Court to affirm the order of the trial court granting summary judgment in favor of Leon Kinney on count two of plaintiff's second amended complaint. I'm asking for this relief because the trial court was correct when it ruled that Mr. Kinney did not owe a duty to the plaintiff. Mr. Kinney did not owe a duty to the plaintiff because plaintiff's injury occurred on a parkway that he did not own, nor did he appropriate it or control it for his own purposes. Appropriation or control requires an affirmative conduct or act on Mr. Kinney's park, which prevents the public from using the property in an ordinary manner. The evidence is undisputed that the plaintiff was not prevented from using the parkway in an ordinary manner. She was merely crossing it to get to the street to go catch up with her husband who was going on a walk. There's no evidence that Mr. Kinney blocked the parkway, parked his car on the parkway, displayed goods on the parkway, which appellate courts have found to constitute affirmative conduct. Merely mowing the parkway, which is an activity I think should be encouraged, does not constitute affirmative conduct. There is also no evidence that Mr. Kinney's mere mowing of the parkway 20 days before this particular occurrence was in any way negligent. Now, plaintiff's reliance on the Smith v. Rengel case I believe is misplaced. I do not believe that that decision is binding on this Court. It's not binding because it's factually distinguishable from the present case. Well, it wouldn't be binding upon us in any event because it's not a decision of the Supreme Court of Illinois. I agree, Your Honor. I'm responding to the counsel's question. There's a point that I made earlier today in oral arguments that when we are cited prior appellate court decisions as precedent, the question is, is it good? Is it a good ruling? Does it make sense? Is it something that we should follow because we're not required to? Well, let me rephrase my statement then, Your Honor. I do not believe that the Smith v. Rengel case is a decision that this Court should follow. And because of that, I think it's factually distinguishable for three reasons. First of all, the status of the plaintiff. In Smith, the first inquiry that the Court made there was to determine the status of the plaintiff. And the status of the plaintiff in that case was one of an invitee of a tenant to a landlord. In our case here, we don't have an invitee. So the status of the plaintiff is completely different. Secondly, the Smith case involved a matter of ingress and egress, which we don't have here either. The plaintiff in this case wasn't even going on to the Kinney property. She was walking away from it. So we don't have that issue to have to contend with. And thirdly, in Smith, there was evidence that the defendant either caused or contributed to cause the defect in the property that injured the plaintiff. And here, there is no competent evidence that Mr. McKinney mowed that parkway in an improper or negligent manner. So for those reasons, I do not believe that Smith applies. Furthermore, the question in Smith was very limited. I'm just going to quote from the decision. The Court says, the central inquiry in this case is whether a landlord owed any duty of care to an invitee or social guest of his tenant who was injured in an area adjacent to, but not upon, the landlord's premises. And that's on page 205 of the Illinois Appellate Third Decision. So in this case, we don't have a landlord. We don't have an invitee. We don't have ingress, egress. We don't have evidence of negligence on the part of Mr. Kinney. So Smith just does not apply in this circumstance. The rule that was announced in the Burke, Gilmore, and I believe Karachi, I hope I'm pronouncing that correct, decisions is the one that applies. And that's the rule that requires appropriation or control of the adjacent parcel by the adjoining landowner before a duty is imposed. So as I mentioned previously, the only evidence that exists in this case with respect to Kinney's conduct is that he mowed the parkway. Appellate courts have determined that other such ministerial acts, not ministerial, but maintenance acts, such as shoveling snow, sweeping, salting, again, activities that should be encouraged are not going to rise to this level of affirmative conduct that's necessary to impose a duty. Otherwise, people are going to stop doing those things that I believe should be encouraged. So for those reasons, the trial court ruled correctly that there was no duty. One other aspect that I do want to touch on briefly because it was raised by a plaintiff is the conduct of Mr. Kinney in mowing his yard. There is no evidence that anything that Mr. Kinney did contributed or caused the injury to the plaintiff. The plaintiff testified at her deposition that she stepped on leaves and what she assumed was grass because the grass was high. That's her testimony. It's found on page 324, 325 of the record. Say that again? She testified she stepped on leaves and what she assumed was grass? I stepped on grass and what I assumed was grass because the grass was high. That's her testimony from the deposition. So she's guessing. And she didn't see what was there and that cannot form the basis to support any claim that Mr. Kinney was negligent in what he did, particularly since he did mow 20 days before this alleged incident. So, Your Honors, for that reason, I would ask that the court affirm the trial court and uphold the summary judgment that was entered in favor of Mr. Kinney. Thank you. Okay. Thank you. Is there any rebuttal? I'll go ahead and address the comments by Counsel for Kinney since they were fresh. When he said that he did point out that he grasped the moat about 20 or 21 days prior to the injury. However, I'd also point out that just common sense would dictate that if it did sit 10.56 inches below the grass level, there could still easily be clumps of grass there because of the depression that it'd be sitting in. He also stated there was no testimony regarding that. However, there was testimony that he did point out from the deposition of Ms. Hollenbeck, and there was also an affidavit that she submitted that she later went back to see where she injured herself and that there was cut clumps of grass in the catch basin. Now, as far as the City of Tuscola, we previously discussed that there's no standard for what's permissible for a catch basin. However, as Counsel pointed out, she said that, and I knew that there was something in the record, but I couldn't recall what you asked, that Dennis Kersan testified that usually these catch basins sit 6 to 8 inches below the surface. And I would suggest that 10.56 inches is not 6 to 8 inches. There is testimony that it was deeper than 6 to 8 inches from the plant and from her husband, which is not how Counsel phrased that. I think that a jury doesn't need an expert to decide whether or not 10.56 inches isn't reasonably dangerous. But what about the method of measuring, Counsel? I mean, that was the whole point of opposing Counsel, that if you measure to the top of the grass, that's not the measurement you're looking for. You're looking to determine what is the difference between the catch basin, the lid, and ground or sod. Admittedly, Your Honor, she's not an expert in measuring grass, and she's not an engineer. There was probably some way she could have done that better, and I agree with that. However, at a minimum, there is testimony from her husband, who I believe said it was 8 to 9 inches. It may have been 8. I'm not positive about that. Didn't she reportedly take two measurements? She did. She did. And they both came out identical? That's what she said, yes, sir. Which means the grass had to be exactly the same height the second time she took the measurement as the first time. Well, I suppose that would be correct. I guess it's possible. Unless you, Your Honors, have anything else, I would ask that you reverse the trial court's order. And thank you on behalf of myself and the plaintiff for your time. Just one quick question. Did Ms. Torello, if I pronounced correctly, properly characterize the business about the height of the duct of the hole, the measurement to the top of the grass? I'm sorry, can you repeat that? Measurement to the top of the grass, not to the ground level? Well, that's what the affidavit said. Counsel, most affidavits aren't prepared by the affiance in civil litigation. They're prepared by counsel. How did counsel think an affidavit talking to the top of the grass as opposed to ground level would be helpful? Well, I admit that that was probably not the best term to use. I probably should have said sod level or the other attorney that was working on this probably should have said sod level, however. Okay. Thank you. Thank you. Thanks to all three of you.  The court stands in for recess.